UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TOM GONZALES,<br><br>        Plaintiff,<br><br>vs.<br><br>SHOTGUN NEVADA INVESTMENTS, LLC et al.,<br><br>        Defendants. | 2:13-cv-00931-RCJ-VPC<br><br>**ORDER** |

    This bankruptcy removal case arises out of the alleged breach of a settlement agreement that was part of a confirmation plan in a Chapter 11 bankruptcy action. Pending before the Court is a Motion for Summary Judgment (ECF No. 10) based upon issue preclusion. For the reasons given herein, the Court grants the motion as a motion to dismiss, with leave to amend.

**I.    FACTS AND PROCEDURAL HISTORY**

    This is the second action the Court has seen by Plaintiff Tom Gonzales—there may be more—concerning Plaintiff's entitlement to a fee under a Confirmation Order the undersigned entered approximately ten years ago while sitting as a bankruptcy judge.

    **A.    The Previous Case**

    On December 7, 2000, Plaintiff loaned $41.5 million to Desert Land, LLC and Desert Oasis Apartments, LLC to finance their acquisition and/or development of land ("Parcel A") in

Las Vegas, Nevada.  The loan was secured by a deed of trust.  On May 31, 2002, Desert Land and Desert Oasis Apartments, as well as Desert Ranch, LLC (collectively, the "Desert Entities"), each filed for bankruptcy, and the undersigned jointly administered those three bankruptcies while sitting as a bankruptcy judge.  The court confirmed the second amended plan, and the Confirmation Order included a finding that a settlement had been reached under which Gonzales would extinguish his note and reconvey his deed of trust, Gonzales and another party would convey their fractional interests in Parcel A to Desert Land so that Desert Land would own 100% of Parcel A, Gonzales would receive Desert Ranch's 65% in interest in another property, and Gonzales would receive $10 million if Parcel A were sold or transferred after 90 days (the "Parcel Transfer Fee").  Gonzales appealed the Confirmation Order, and the Bankruptcy Appellate Panel affirmed, except as to a provision subordinating Gonzales's interest in the Parcel Transfer Fee to up to $45 million in financing obtained by the Desert Entities.

In 2011, Gonzales sued Desert Land, Desert Oasis Apartments, Desert Oasis Investments, LLC, Specialty Trust, Specialty Strategic Financing Fund, LP, Eagle Mortgage Co., and Wells Fargo (as trustee for a mortgage-backed security) in state court for: (1) declaratory judgment that a transfer of Parcel A had occurred entitling him to the Parcel Transfer Fee; (2) declaratory judgment that the lender defendants in that action knew of the bankruptcy proceedings and the requirement of the Parcel Transfer Fee; (3) breach of contract (for breach of the Confirmation Order); (4) breach of the implied covenant of good faith and fair dealing (same); (5) judicial foreclosure against Parcel A under Nevada law; and (6) injunctive relief.  Defendants removed that case to the Bankruptcy Court.  The Bankruptcy Court recommended withdrawal of the reference because the undersigned issued the underlying Confirmation Order while sitting as a bankruptcy judge.  One or more parties so moved, and the Court granted the motion.  That case, *Gonzales v. Desert Land, LLC*, 3:11-cv-613, remains pending before the Court.  The Court dismissed the second and fifth causes of action and later granted certain defendants' counter-

motion for summary judgment as against the remaining claims.  Plaintiff asked the Court to reconsider and to clarify which, if any, of its claims remained, and defendants asked the Court to certify its summary judgment order under Rule 54(b) and to enter judgment in their favor on all claims.  The Court denied the motion to reconsider, clarified that it had intended to rule on all claims, certified the summary judgment order for immediate appeal, and invited defendants to submit a proposed judgment, as Plaintiff had not yet done so.  Defendants submitted a proposed judgment, which the Court signed, and Plaintiff asked the Court to enjoin defendants from further encumbering Parcel A with loans or mechanic's liens until the Court of Appeals rules, a motion the Court denied.

### B.     The Present Case

In the present case, also removed from state court, Plaintiff recounts the Confirmation Order and the Parcel Transfer Fee. (*See* Compl. ¶¶ 10–14, Apr. 10, 2013, ECF No. 1, at 11).  Plaintiff also recounts the history of the '613 Case. (*See id.* ¶¶ 17–21).  Plaintiff alleges that Defendant Shotgun Nevada Investments, LLC ("Shotgun") began making loans to Desert Entities for the development of Parcel A between 2012 and January 2013 despite its awareness of the Confirmation Order and Parcel A transfer fee provision therein. (*See id.* ¶¶ 22–23).  Plaintiff sued Shotgun, Shotgun Creek Las Vegas, LLC, Shotgun Creek Investments, LLC, and Wayne M. Perry for intentional interference with contract, intentional interference with prospective economic advantage, and unjust enrichment based upon their having provided financing to the Desert Entities to develop Parcel A.  Defendants removed and have moved for summary judgment, arguing that the preclusion of certain issues decided in the '613 Case necessarily prevents Plaintiffs from prevailing in the present case.

## II.    DISCUSSION

The Court grants the motion as a motion to dismiss, with leave to amend, as against all claims.  First, no unjust enrichment claim can lie in this case under the facts as alleged, as the

prerequisites for quasi-contract are not present. Plaintiff does not allege having conferred any benefit upon Defendants requiring a finding of an implied-in-law contract between Plaintiff and Defendants to avoid an injustice. *See Unionamerica Mortg. & Equity Trust v. McDonald*, 626 P.2d 1272, 1273–74 (Nev. 1981). The Court dismisses this claim, with leave to amend.

Second and third, the Court need not determine whether the interference claims are barred by issue preclusion, because Plaintiff has failed to make out a prima facie case of interference in the present case. "In an action for intentional interference with contractual relations, a plaintiff must establish: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003) (footnote omitted).

> "At the heart of [an intentional interference] action is whether Plaintiff has proved *intentional acts by Defendant* intended or designed to disrupt Plaintiff's contractual relations . . . ." Contrary to J.J. Industries' argument, one does not commit the necessary intentional act—inducement to commit breach of contract—merely by entering into an agreement with knowledge that the other party cannot perform because there is an existing contract between the other party and a third person. Indeed, the United States District Court of Nevada, interpreting Nevada law, explained that the plaintiff must establish that the defendant had a motive to induce breach of the contract with the third party:
>
>> "The fact of a general intent to interfere, under a definition that includes imputed knowledge of consequences, does not alone suffice to impose liability. *Inquiry into the motive or purpose of the actor is necessary.* The inducement of a breach, therefore, does not always vest third or incidental persons with a tort action against the one who interfered. Where the actor's conduct is not criminal or fraudulent, and absent some other aggravating circumstances, it is necessary to identify those whom the actor had a specific motive or purpose to injure by his interference and to limit liability accordingly."
>
> As previously noted, in *Sutherland* we provided the necessary elements to establish the tort of intentional interference with contractual relations. In doing so, we relied on *Ramona Manor Convalescent Hospital v. Care Enterprises*. In that case, the California Court of Appeal explained that the plaintiff must prove that the defendant intended to induce the other person to breach its contract with the plaintiff. The court noted that because the action involves an intentional tort, the inquiry usually concerns the defendant's ultimate purpose or the objective that he or she is

> seeking to advance. Thus, mere knowledge of the contract is insufficient to establish that the defendant intended or designed to disrupt the plaintiff's contractual relationship; instead, the plaintiff must demonstrate that the defendant intended to induce the other party to breach the contract with the plaintiff. Accordingly, the plaintiff must inquire into the defendant's motive.

*Id.* at 1268 (footnotes omitted). The tort of intentional interference with prospective economic advantage is similar, requiring proof of:

> 1) a prospective contractual relationship between the plaintiff and a third party; 2) the defendant's knowledge of this prospective relationship; 3) the intent to harm the plaintiff by preventing the relationship; 4) the absence of privilege or justification by the defendant; and, 5) actual harm to the plaintiff as a result of the defendant's conduct.

*Leavitt v. Leisure Sports Inc.*, 734 P.2d 1221, 1225 (Nev. 1987).

The intentional interference with prospective economic advantage claim fails on its face, because Plaintiff does not allege any prospective relationship between himself and the Desert Entities that was frustrated by Defendants' actions, but only the frustration of an existing contract, i.e., the Confirmation Order. As to the intentional interference with contractual relations claim, Plaintiff has produced no evidence that would permit a reasonable jury to find that Defendant committed "intentional acts intended or designed to disrupt the contractual relationship." *J.J. Indus., LLC*, 71 P.3d at 1267. Moreover, Plaintiff does not plausibly allege the all-important third and fourth elements of the claim. Plaintiff only alleges that Defendants gave the Desert Entities loans knowing or having reason to suspect that giving the loans would trigger the Desert Entities' liability for the Parcel Transfer Fee. But knowingly triggering a condition precedent to performance of a contract is not in-and-of-itself interference with the contract, because the occurrence of a condition precedent does not alone cause a breach; it only makes performance due immediately, assuming no other conditions. There is no allegation that Defendants care whether the Desert Entities comply with the Confirmation Order's Parcel Transfer Fee provision, or that they stand to gain anything by the Desert Entities' failure to pay the Parcel Transfer Fee, if in fact it has been triggered. Therefore, the intentional interference

claims fail under Rule 8(a) and the Court dismisses those claims, with leave to amend. If Plaintiff truly believes the recent encumbrances of Parcel A have triggered the Parcel Transfer Fee independently of the acts already complained of in the '613 Case, he may file a supplemental claim to that effect in that case.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 10) is GRANTED as a motion to dismiss, with leave to amend within twenty-one (21) days of the entry of this Order into the electronic docket.

IT IS FURTHER ORDERED that the Motion to Stay (ECF No. 16) is DENIED as moot.

IT IS SO ORDERED.

DATED this 30th day of July, 2013.

_____
ROBERT C. JONES
United States District Judge