UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| TOM GONZALES, | ) | |
|       Plaintiff, | ) | |
| vs. | ) | 2:13-cv-00931-RCJ-VPC |
| SHOTGUN NEVADA INVESTMENTS, LLC et al., | ) | **ORDER** |
|       Defendants. | ) | |

This bankruptcy removal case arises out of the alleged breach of a settlement agreement that was part of a confirmation plan in a Chapter 11 bankruptcy action. Pending before the Court are a Motion for Summary Judgment (ECF No. 31), a Motion to Compel Discovery (ECF No. 32), and a Motion to Stay Discovery (ECF No. 36).

I.  **FACTS AND PROCEDURAL HISTORY**

This is the second action the Court has seen by Plaintiff Tom Gonzales—there may be more—concerning Plaintiff's entitlement to a fee under a Confirmation Order the undersigned entered approximately ten years ago while sitting as a bankruptcy judge.

A.  **The Previous Case**

On December 7, 2000, Plaintiff loaned $41.5 million to Desert Land, LLC and Desert Oasis Apartments, LLC to finance their acquisition and/or development of land ("Parcel A") in

Las Vegas, Nevada. The loan was secured by a deed of trust. On May 31, 2002, Desert Land and Desert Oasis Apartments, as well as Desert Ranch, LLC (collectively, the "Desert Entities"), each filed for bankruptcy, and the undersigned jointly administered those three bankruptcies while sitting as a bankruptcy judge. The court confirmed the second amended plan, and the Confirmation Order included a finding that a settlement had been reached under which Gonzales would extinguish his note and reconvey his deed of trust, Gonzales and another party would convey their fractional interests in Parcel A to Desert Land so that Desert Land would own 100% of Parcel A, Gonzales would receive Desert Ranch's 65% in interest in another property, and Gonzales would receive $10 million if Parcel A were sold or transferred after 90 days (the "Parcel Transfer Fee"). Gonzales appealed the Confirmation Order, and the Bankruptcy Appellate Panel affirmed, except as to a provision subordinating Gonzales's interest in the Parcel Transfer Fee to up to $45 million in financing obtained by the Desert Entities.

In 2011, Gonzales sued Desert Land, Desert Oasis Apartments, Desert Oasis Investments, LLC, Specialty Trust, Specialty Strategic Financing Fund, LP, Eagle Mortgage Co., and Wells Fargo (as trustee for a mortgage-backed security) in state court for: (1) declaratory judgment that a transfer of Parcel A had occurred entitling him to the Parcel Transfer Fee; (2) declaratory judgment that the lender defendants in that action knew of the bankruptcy proceedings and the requirement of the Parcel Transfer Fee; (3) breach of contract (for breach of the Confirmation Order); (4) breach of the implied covenant of good faith and fair dealing (same); (5) judicial foreclosure against Parcel A under Nevada law; and (6) injunctive relief. Defendants removed that case to the Bankruptcy Court. The Bankruptcy Court recommended withdrawal of the reference because the undersigned issued the underlying Confirmation Order while sitting as a bankruptcy judge. One or more parties so moved, and the Court granted the motion. That case, *Gonzales v. Desert Land, LLC*, 3:11-cv-613, remains pending before the Court. The Court dismissed the second and fifth causes of action and later granted certain defendants' counter-

motion for summary judgment as against the remaining claims.  Plaintiff asked the Court to reconsider and to clarify which, if any, of its claims remained, and defendants asked the Court to certify its summary judgment order under Rule 54(b) and to enter judgment in their favor on all claims.  The Court denied the motion to reconsider, clarified that it had intended to rule on all claims, certified the summary judgment order for immediate appeal, and invited defendants to submit a proposed judgment, as Plaintiff had not yet done so.  Defendants submitted a proposed judgment, which the Court signed, and Plaintiff asked the Court to enjoin defendants from further encumbering Parcel A with loans or mechanic's liens until the Court of Appeals rules, a motion the Court denied.

B.     **The Present Case**

In the present case, also removed from state court, Plaintiff recounts the Confirmation Order and the Parcel Transfer Fee. (*See* Compl. ¶¶ 10–14, Apr. 10, 2013, ECF No. 1, at 11).  Plaintiff also recounts the history of the '613 Case. (*See id.* ¶¶ 17–21).  Plaintiff alleges that Defendant Shotgun Nevada Investments, LLC ("Shotgun") began making loans to Desert Entities for the development of Parcel A between 2012 and January 2013 despite its awareness of the Confirmation Order and Parcel A transfer fee provision therein. (*See id.* ¶¶ 22–23).  Plaintiff sued Shotgun, Shotgun Creek Las Vegas, LLC, Shotgun Creek Investments, LLC, and Wayne M. Perry for intentional interference with contract, intentional interference with prospective economic advantage, and unjust enrichment based upon their having provided financing to the Desert Entities to develop Parcel A.  Defendants removed and moved for summary judgment, arguing that the preclusion of certain issues decided in the '613 Case necessarily prevents Plaintiffs from prevailing in the present case.  The Court dismissed the claims for failure to state a claim, giving Plaintiff leave to amend the claims for intentional interference with contractual relations and intentional interference with prospective economic advantage.

Plaintiff filed the Amended Complaint ("AC"). (*See* Am. Compl., Aug. 20, 2013, ECF

No. 28). Plaintiff alleges that the Confirmation Order permitted Parcel A to be used as collateral for up to $25,000,000 in mortgages of Parcel A itself or as collateral for a mortgage securing the purchase of real property subject to the FLT Option if the proceeds were used only for the purchase of that real property, but that any encumbrance of Parcel A outside of these parameter would trigger the Parcel Transfer Fee. (*See id.* ¶¶ 15–16). The Court in a previous action by Plaintiff, No. 3:11-cv-613, ruled that none of the financing or transactions since entry of the Confirmation Order had triggered the Parcel Transfer Fee, and that Plaintiff had no lien against Parcel A. (*See id.* ¶¶ 20–23). Plaintiff has appealed those rulings. (*Id.* ¶ 24). Various Shotgun entities made additional loans to the Desert Entities in 2012 and 2013 "related to the development of Parcel A." (*Id.* ¶¶ 25–26). Multiple Shotgun entities have also invested in SkyVue, LLC, the company that owns the entities that own Parcel A. (*Id.* ¶ 27). Plaintiff alleges that Perry, the principal of the Shotgun entities, did not document his $10 million investment was to "avoid evidence of a transfer," and thus the triggering of the Parcel Transfer Fee. (*See id.* ¶ 29). Defendants have moved for summary judgment, and Plaintiff has moved to compel discovery under Rule 56(d).

## II.     LEGAL STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In determining summary judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at

trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477

U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

## III.   ANALYSIS

The tort of intentional interference with prospective economic advantage requires proof of:

> 1) a prospective contractual relationship between the plaintiff and a third party; 2) the defendant's knowledge of this prospective relationship; 3) the intent to harm the plaintiff by preventing the relationship; 4) the absence of privilege or justification by the defendant; and, 5) actual harm to the plaintiff as a result of the defendant's conduct.

*Leavitt v. Leisure Sports Inc.*, 734 P.2d 1221, 1225 (Nev. 1987).  The intentional interference with prospective economic advantage claim fails on its face, because Plaintiff still does not allege any *prospective* contractual relationship between himself and the Desert Entities that was frustrated by Defendants' actions, but only the frustration of an existing contract, i.e., the Confirmation Order.  The Court rejects Plaintiff's attempt to characterize prospective performance under an existing contract as "prospective economic advantage."  Interference with prospective *performance under an existing contractual relationship* and interference with the prospective *creation of a contractual relationship* are distinct torts, and it is the former that is implicated in this case.

Plaintiff has, however, made out a prima facie case of intentional interference with contractual relations in the AC.  "In an action for intentional interference with contractual relations, a plaintiff must establish: (1) a valid and existing contract; (2) the defendant's

knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003) (footnote omitted).

> "At the heart of [an intentional interference] action is whether Plaintiff has proved *intentional acts by Defendant* intended or designed to disrupt Plaintiff's contractual relations . . . ." Contrary to J.J. Industries' argument, one does not commit the necessary intentional act—inducement to commit breach of contract—merely by entering into an agreement with knowledge that the other party cannot perform because there is an existing contract between the other party and a third person. Indeed, the United States District Court of Nevada, interpreting Nevada law, explained that the plaintiff must establish that the defendant had a motive to induce breach of the contract with the third party:
>
> > "The fact of a general intent to interfere, under a definition that includes imputed knowledge of consequences, does not alone suffice to impose liability. *Inquiry into the motive or purpose of the actor is necessary.* The inducement of a breach, therefore, does not always vest third or incidental persons with a tort action against the one who interfered. Where the actor's conduct is not criminal or fraudulent, and absent some other aggravating circumstances, it is necessary to identify those whom the actor had a specific motive or purpose to injure by his interference and to limit liability accordingly."
>
> As previously noted, in *Sutherland* we provided the necessary elements to establish the tort of intentional interference with contractual relations. In doing so, we relied on *Ramona Manor Convalescent Hospital v. Care Enterprises*. In that case, the California Court of Appeal explained that the plaintiff must prove that the defendant intended to induce the other person to breach its contract with the plaintiff. The court noted that because the action involves an intentional tort, the inquiry usually concerns the defendant's ultimate purpose or the objective that he or she is seeking to advance. Thus, mere knowledge of the contract is insufficient to establish that the defendant intended or designed to disrupt the plaintiff's contractual relationship; instead, the plaintiff must demonstrate that the defendant intended to induce the other party to breach the contract with the plaintiff. Accordingly, the plaintiff must inquire into the defendant's motive.

*Id.* at 1268 (footnotes omitted).

Plaintiff has alleged a valid and existing contract, i.e., the Confirmation Order and Settlement Agreement), (*See* Am. Compl. ¶ 14), and Defendants' knowledge of the Confirmation Order, (*see id.* ¶¶ 31–32). Plaintiff's allegation that Defendants intentionally and actually disrupted the contractual relationship by concealing the fact of over-encumbrance or de-facto

surreptitious transfer and hence the triggering of the Parcel Transfer Fee, (*see id.* ¶¶ 29, 38–39), is sufficient to make out an interference claim.  Plaintiff's allegations rely, of course, upon the contention that the Parcel Transfer Fee has been triggered by Defendants' actions.  That issue has been adjudicated against Plaintiff in the '613 case and is on appeal, but Plaintiff alleges here that the Parcel Transfer Fee has been triggered by events subsequent to those alleged in the '613 Case.  He may bring such a claim here without interfering with the Court of Appeals' adjudication of the '613 Case.

     Plaintiff provides the deposition of Defendant Perry, the principal of the Shotgun Defendants.  Plaintiff argues that Perry admitted knowledge of the '613 Case, and hence of the Confirmation Order.  But the transcript of Perry's deposition in fact indicates that he admits obtaining knowledge of the'613 Case (and not even the Confirmation Order or Settlement Agreement in particular) only after having made his $10,000,000 investment. (*See* Perry Dep. 23:3–7, Sept. 11, 2012, ECF No. 28-3).  He testified that he only became aware of Plaintiff's claim to the Parcel Transfer Fee "a few months" before his deposition. (*See id.* 25:6–16).  He specifically denied avoiding documentation of his investment due to a desire to avoid the Parcel Transfer Fee. (*See id.* 28:18–25).  As Defendants argue, and as the Court has previously noted, knowledge of the Parcel Transfer Fee alone—and there is no evidence of such knowledge before the investment at issue was made—would say nothing of Defendants' intent to interfere with the Desert Entities' obligation to pay the Parcel Transfer Fee.

     However, further discovery under Rule 56(d) is warranted, and the Court will therefore not grant summary judgment at this time without the benefit of fuller discovery as to events subsequent to those alleged in the '613 Case.  The magistrate judge did not enter a scheduling order but instructed the parties to attempt to reach an agreement thereupon, indicating that Plaintiff should file a Rule 56(d) motion if no agreement could be reached.  Here, it is appropriate to grant Rule 56(d) relief because Plaintiff is not requesting additional discovery

beyond what the magistrate judge granted in a scheduling order but rather is simply requesting normal discovery according to such an order beyond the "limited discovery" agreed to before the magistrate judge.  In fact, it is not even clear Plaintiff need resort to Rule 56(d), as no scheduling order has been issued.  The present motion for summary judgment may simply be better characterized as unripe because normal discovery has not been had.

Finally, the Court will strike the civil conspiracy and declaratory judgment claims, as Plaintiff did not request leave to add them.  The Court permitted Plaintiff leave only to amend the intentional interference claims.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 31) is DENIED.

IT IS FURTHER ORDERED that the Motion to Stay Discovery (ECF No. 36) is DENIED as moot.

IT IS FURTHER ORDERED that the Motion to Compel Discovery under Rule 56(d) (ECF No. 32) is GRANTED.  Plaintiff shall SUBMIT a proposed scheduling order in accordance with the deadlines requested in the Rule 56(d) motion.  Due to the intervening time between the filing of the motion and the issuance of the present Order, Plaintiff may extend the requested deadlines by up to 60 days.

IT IS FURTHER ORDERED that the civil conspiracy and declaratory judgment claims are STRICKEN.

IT IS SO ORDERED.

Dated this 10th day of March, 2014.

_____
ROBERT C. JONES
United States District Judge