**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| TOM GONZALES, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | 2:13-cv-00931-RCJ-VPC |
| SHOTGUN NEVADA INVESTMENTS, LLC et al., | ) ) ) | **ORDER** |
| Defendants. | ) ) ) | |

This bankruptcy removal case arises out of the alleged breach of a settlement agreement that was part of a confirmation plan in a Chapter 11 bankruptcy action. Pending before the Court is a Motion for Summary Judgment (ECF No. 55) and a Motion in Limine (ECF No. 57). For the reasons given herein, the Court denies the motions.

**I.     FACTS AND PROCEDURAL HISTORY**

This is the second action in this Court by Plaintiff Tom Gonzales concerning his entitlement to a fee under a Confirmation Order the undersigned entered over ten years ago while sitting as a bankruptcy judge.

**A.     The Previous Case**

On December 7, 2000, Plaintiff loaned $41.5 million to Desert Land, LLC and Desert Oasis Apartments, LLC to finance their acquisition and/or development of land ("Parcel A") in

Las Vegas, Nevada.  The loan was secured by a deed of trust.  On May 31, 2002, Desert Land and Desert Oasis Apartments, as well as Desert Ranch, LLC (collectively, the "Desert Entities"), each filed for bankruptcy, and the undersigned jointly administered those three bankruptcies while sitting as a bankruptcy judge.  The court confirmed the second amended plan, and the Confirmation Order included a finding that a settlement had been reached under which Gonzales would extinguish his note and reconvey his deed of trust, Gonzales and another party would convey their fractional interests in Parcel A to Desert Land so that Desert Land would own 100% of Parcel A, Gonzales would receive Desert Ranch's 65% in interest in another property, and Gonzales would receive $10 million if Parcel A were sold or transferred after 90 days (the "Parcel Transfer Fee").  Gonzales appealed the Confirmation Order, and the Bankruptcy Appellate Panel affirmed, except as to a provision subordinating Gonzales's interest in the Parcel Transfer Fee to up to $45 million in financing obtained by the Desert Entities.

In 2011, Gonzales sued Desert Land, Desert Oasis Apartments, Desert Oasis Investments, LLC, Specialty Trust, Specialty Strategic Financing Fund, LP, Eagle Mortgage Co., and Wells Fargo (as trustee for a mortgage-backed security) in state court for: (1) declaratory judgment that a transfer of Parcel A had occurred entitling him to the Parcel Transfer Fee; (2) declaratory judgment that the lender defendants in that action knew of the bankruptcy proceedings and the requirement of the Parcel Transfer Fee; (3) breach of contract (for breach of the Confirmation Order); (4) breach of the implied covenant of good faith and fair dealing (same); (5) judicial foreclosure against Parcel A under Nevada law; and (6) injunctive relief.  Defendants removed that case to the Bankruptcy Court.  The Bankruptcy Court recommended withdrawal of the reference because the undersigned issued the underlying Confirmation Order while sitting as a bankruptcy judge.  One or more parties so moved, and the Court granted the motion.  That case, *Gonzales v. Desert Land, LLC*, 3:11-cv-613, remains pending before the Court.  The Court dismissed the second and fifth causes of action and later granted certain defendants' counter-

1    motion for summary judgment as against the remaining claims.  Plaintiff asked the Court to

2    reconsider and to clarify which, if any, of its claims remained, and defendants asked the Court to

3    certify its summary judgment order under Rule 54(b) and to enter judgment in their favor on all

4    claims.  The Court denied the motion to reconsider, clarified that it had intended to rule on all

5    claims, certified the summary judgment order for immediate appeal, and invited defendants to

6    submit a proposed judgment, as Plaintiff had not yet done so.  Defendants submitted a proposed

7    judgment, which the Court signed, and Plaintiff asked the Court to enjoin defendants from

8    further encumbering Parcel A with loans or mechanic's liens until the Court of Appeals rules, a

9    motion the Court denied.  The Court of Appeals has now affirmed, ruling that the Parcel transfer

10   Fee has not been triggered based on the allegations in that case, and that Plaintiff has no lien

11   against Parcel A.

12            **B.        The Present Case**

13            In the present case, also removed from state court, Plaintiff recounts the Confirmation

14   Order and the Parcel Transfer Fee. (*See* Compl. ¶¶ 10–14, Apr. 10, 2013, ECF No. 1, at 11).

15   Plaintiff also recounts the history of the '613 Case. (*See id.* ¶¶ 17–21).  Plaintiff alleges that

16   Defendant Shotgun Nevada Investments, LLC ("Shotgun") began making loans to Desert Entities

17   for the development of Parcel A between 2012 and January 2013 despite its awareness of the

18   Confirmation Order and Parcel A transfer fee provision therein. (*See id.* ¶¶ 22–23).  Plaintiff sued

19   Shotgun, Shotgun Creek Las Vegas, LLC, Shotgun Creek Investments, LLC, and Wayne M.

20   Perry for intentional interference with contract, intentional interference with prospective

21   economic advantage, and unjust enrichment based upon their having provided financing to the

22   Desert Entities to develop Parcel A.  Defendants removed and moved for summary judgment,

23   arguing that the preclusion of certain issues decided in the '613 Case necessarily prevented

24   Plaintiffs from prevailing in the present case.  The Court granted that motion as a motion to

25   dismiss, with leave to amend.

1    Plaintiff filed the Amended Complaint ("AC"). (*See* Am. Compl., Aug. 20, 2013, ECF

2    No. 28).  Plaintiff alleges that the Confirmation Order permitted Parcel A to be used as collateral

3    for up to $25,000,000 in mortgages of Parcel A itself or as collateral for a mortgage securing the

4    purchase of real property subject to the FLT Option if the proceeds were used only for the

5    purchase of that real property, but that any encumbrance of Parcel A outside of these parameters

6    would trigger the Parcel Transfer Fee. (*See id.* ¶¶ 15–16).  Various Shotgun entities made

7    additional loans to the Desert Entities in 2012 and 2013 "related to the development of Parcel

8    A." (*Id.* ¶¶ 25–26).  Multiple Shotgun entities have also invested in SkyVue Las Vegas, LLC

9    ("SkyVue"), the company that owns the entities that own Parcel A. (*Id.* ¶ 27).  Plaintiff alleges

10   that the reason Perry, the principal of the Shotgun entities, did not document his $10 million

11   investment was to "avoid evidence of a transfer," and thus the triggering of the Parcel Transfer

12   Fee. (*See id.* ¶ 29).

13          Defendants moved for summary judgment, and Plaintiff moved to compel discovery

14   under Rule 56(d).  The Court struck the conspiracy and declaratory judgment claims from the

15   AC, because Plaintiff had no leave to add them.  The Court otherwise denied the motion for

16   summary judgment and granted the motion to compel discovery, although the Court noted that

17   the intentional interference with prospective economic advantage claim (but not the intentional

18   interference with contractual relations claim) was legally insufficient.  Defendants have now

19   moved for summary judgment after further discovery and have also filed a motion in limine.

20   **II.    LEGAL STANDARDS**

21          **A.    Summary Judgment**

22          A court must grant summary judgment when "the movant shows that there is no genuine

23   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

24   Civ. P. 56(a).  Material facts are those which may affect the outcome of the case. *See Anderson v.*

25   *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there

1    is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  A

2    principal purpose of summary judgment is "to isolate and dispose of factually unsupported

3    claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  In determining summary

4    judgment, a court uses a burden-shifting scheme:

5            When the party moving for summary judgment would bear the burden of proof at
             trial, it must come forward with evidence which would entitle it to a directed verdict
6            if the evidence went uncontroverted at trial.  In such a case, the moving party has the
             initial burden of establishing the absence of a genuine issue of fact on each issue
7            material to its case.

8    *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations

9    and internal quotation marks omitted).  In contrast, when the nonmoving party bears the burden

10   of proving the claim or defense, the moving party can meet its burden in two ways: (1) by

11   presenting evidence to negate an essential element of the nonmoving party's case; or (2) by

12   demonstrating that the nonmoving party failed to make a showing sufficient to establish an

13   element essential to that party's case on which that party will bear the burden of proof at trial. *See*

14   *Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary

15   judgment must be denied and the court need not consider the nonmoving party's evidence. *See*

16   *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

17           If the moving party meets its initial burden, the burden then shifts to the opposing party to

18   establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

19   475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party

20   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

21   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

22   versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

23   626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment

24   by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d

25   1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and

1    allegations of the pleadings and set forth specific facts by producing competent evidence that

2    shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

3    At the summary judgment stage, a court's function is not to weigh the evidence and

4    determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477

5    U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are

6    to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely

7    colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

8    **B.      Motions in Limine**

9    A motion in limine is a procedural device to obtain an early and preliminary ruling on the

10    admissibility of evidence.  Black's Law Dictionary defines it as "[a] pretrial request that certain

11    inadmissible evidence not be referred to or offered at trial.  Typically, a party makes this motion

12    when it believes that mere mention of the evidence during trial would be highly prejudicial and

13    could not be remedied by an instruction to disregard." *Black's Law Dictionary* 1171 (10th ed.

14    2014).  Although the Federal Rules of Evidence do not explicitly authorize a motion in limine,

15    the Supreme Court has held that trial judges are authorized to rule on motions in limine pursuant

16    to their authority to manage trials. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing

17    Fed. R. Evid. 103(c) (providing that trial should be conducted so as to "prevent inadmissible

18    evidence from being suggested to the jury by any means")).

19    Judges have broad discretion when ruling on motions in limine. *See Jenkins v. Chrysler*

20    *Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002).  However, a motion in limine should not be

21    used to resolve factual disputes or weigh evidence. *See C&E Servs., Inc., v. Ashland, Inc.*, 539 F.

22    Supp. 2d 316, 323 (D.D.C. 2008).  To exclude evidence on a motion in limine "the evidence

23    must be inadmissible on all potential grounds." *E.g.*, *Ind. Ins. Co. v. Gen. Elec. Co*., 326 F. Supp.

24    2d 844, 846 (N.D. Ohio 2004).  "Unless evidence meets this high standard, evidentiary rulings

25    should be deferred until trial so that questions of foundation, relevancy and potential prejudice

may be resolved in proper context." *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp.

1398, 1400 (N.D. Ill. 1993).  This is because although rulings on motions in limine may save

"time, costs, effort and preparation, a court is almost always better situated during the actual trial

to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1219

(D. Kan. 2007).

In limine rulings are preliminary and therefore "are not binding on the trial judge [who]

may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753,

758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that in limine rulings are always subject to

change, especially if the evidence unfolds in an unanticipated manner).  "Denial of a motion in

limine does not necessarily mean that all evidence contemplated by the motion will be admitted

to trial.  Denial merely means that without the context of trial, the court is unable to determine

whether the evidence in question should be excluded." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

## III.    ANALYSIS

### A.    Defendants' Motion for Summary Judgment

In denying summary judgment as to the intentional interference with contractual relations

claim—the sole claim surviving in this case—the Court noted:

> Plaintiff's allegations rely, of course, upon the contention that the Parcel Transfer Fee
> has been triggered by Defendants' actions.  That issue has been adjudicated against
> Plaintiff in the '613 case and is on appeal, but Plaintiff alleges here that the Parcel
> Transfer Fee has been triggered by events subsequent to those alleged in the '613
> Case.  He may bring such a claim here without interfering with the Court of Appeals'
> adjudication of the '613 Case.

(Order 8:2–7, Mar. 10, 2014, ECF No. 40).  The Court of Appeals' affirmation that the events

alleged in the previous case did not trigger the Parcel Transfer Fee does not foreclose a finding in

the present case that the Parcel Transfer Fee has been triggered by subsequent events not alleged

in the previous case.

The Court denies the motion against the remaining cause of action once again.  Even

assuming Defendants could bear their initial burden on summary judgment, Plaintiff has

provided evidence showing genuine issues of material fact as to whether Defendants: (1) knew of

the contract, i.e., the Parcel Transfer Fee provision of the Confirmation Order; (2) intended to

interfere with payment of the Parcel Transfer Fee; and (3) actually disrupted the payment of the

Parcel Transfer Fee.  These are the only three elements of the five-element cause of action

Defendants challenge.  Existence of the contract is not disputed, and damages would necessarily

flow from the alleged disruption via the non-payment of the $10 million Parcel Transfer Fee after

it had been triggered.

First, Plaintiff has provided evidence (or pointed to Defendants' own evidence) tending to

show that Defendants knew of the Parcel Transfer Fee no later than mid-2012, (*see* Perry Dep.

23:25–24:8, Sept. 11, 2012, ECF No. 65-1, at 176), and that Defendants loaned at least

$12,175,000 and up to $37,175,000 to SkyVue, the entity which owns the Shotgun entities,

which in turn owns Parcel A, (*see* Ex. 4 to Perry Dep., Apr. 17, 2014, ECF No. 56-1, at 223).

Second, Plaintiff has provided evidence (or pointed to Defendants' own evidence)

tending to show that Defendants intended to interfere with payment of the Parcel Transfer Fee.

A party admission by Defendant Perry indicates that the intent was to "kick[] Gonzales way

down the road with zero interest." (*See* E-mail dated Nov. 13, 2012, ECF No. 62-5).  That

comment was in fact made in noting that "it should be easy to demonstrate disputed questions of

fact . . . to make a summary judgment motion [by Gonzales] unavailable." (*Id.*).  He also later

wrote that he believed the "equity infusion by Shotgun into SkyVue likely triggers the Gonzales

transfer fee." (*See* E-mail dated Nov. 29, 2012, ECF No. 62-6, at 3).

Third, Plaintiff has provided evidence (or pointed to Defendants' own evidence) tending

to show that Defendants' acts actually disrupted the contract.  A jury could find that the loans to

SkyVue constituted an encumbrance of Parcel A beyond $25 million, thus triggering the Parcel A

transfer fee.  There appears to be no dispute that Defendants loaned a total of over $25 million to

SkyVue, such that the triggering of the Parcel Transfer Fee would seem clear if the jury accepted the theory that the loans constituted an encumbrance under the Confirmation Order subject to the $25 million limit on permitted financing.

Even assuming Defendants had borne their initial burden, Plaintiff has borne his shifted burden of showing a genuine issue of material fact as to each of the challenged elements of the claim for intentional interference with contractual relations. Defendants have not timely replied. The Court therefore denies the motion for summary judgment.

## B.    Defendants' Motion in Limine

Defendants ask the Court to exclude any testimony of witnesses or documents not disclosed in discovery. The Court denies the motion, because it identifies no piece of evidence to exclude under any particular rule but simply asks the Court to enforce Rule 37(c)(1) should an issue arise thereunder at trial. The Court of course cannot make such a ruling until such an issue manifests itself at trial. Plaintiff's denial of certain requests for admission were not inappropriate simply because there were objections added to the denials. Nor was his response to certain interrogatories inappropriate where he referred Defendants to initial disclosures and objected in part due to the work-product privilege. If Plaintiff attempts to introduce discoverable evidence not disclosed at trial, the Court will not permit it, but no such motion is yet ripe. Finally, Plaintiff did not need to disclose any detailed damage calculations. There is no question that Plaintiff seeks the sum certain of $10 million.

///

///

///

///

///

///

1

**CONCLUSION**

2        IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 55) is

3   DENIED.

4        IT IS FURTHER ORDERED that the Motion in Limine (ECF No. 57) is DENIED.

5        IT IS SO ORDERED.

6   Dated this 16th day of September, 2014.

7

8                                         _____
                                          ROBERT C. JONES
9                                         United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25