# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| TOM GONZALES,<br><br>   Plaintiff,<br><br> vs.<br><br>SHOTGUN NEVADA INVESTMENTS, LLC et al.,<br><br>   Defendants. | 2:13-cv-00931-RCJ-VPC |
| TOM GONZALES,<br><br>   Plaintiff,<br><br> vs.<br><br>DESERT LAND, LLC et al.,<br><br>   Defendants. | 2:15-cv-00915-RCJ-VPC<br><br>**ORDER** |

These consolidated cases arises out of the alleged breach of a settlement agreement that was part of a confirmation plan in a Chapter 11 bankruptcy action. For the reasons given herein, the Court determines that Case No. 2:13-cv-931 will be tried to the Court and Case No. 2:15-cv-915 will simultaneously be tried to a jury.

## I. FACTS AND PROCEDURAL HISTORY

Case No. 2:13-cv-931 is the Lead Case and the second action in this Court by Plaintiff

Tom Gonzales concerning his entitlement to a fee under a Confirmation Order the undersigned entered years ago while sitting as a bankruptcy judge.

### A.   The Previous Case

On December 7, 2000, Plaintiff loaned $41.5 million to Desert Land, LLC and Desert Oasis Apartments, LLC to finance their acquisition and/or development of land ("Parcel A") in Las Vegas, Nevada.  The loan was secured by a deed of trust.  On May 31, 2002, Desert Land and Desert Oasis Apartments, as well as Desert Ranch, LLC (collectively, the "Desert Entities"), each filed for bankruptcy, and the undersigned jointly administered those three bankruptcies while sitting as a bankruptcy judge.  The court confirmed the second amended plan, and the Confirmation Order included a finding that a settlement had been reached under which Gonzales would extinguish his note and reconvey his deed of trust, Gonzales and another party would convey their fractional interests in Parcel A to Desert Land so that Desert Land would own 100% of Parcel A, Gonzales would receive Desert Ranch's 65% in interest in another property, and Gonzales would receive $10 million if Parcel A were sold or transferred after 90 days (the "Parcel Transfer Fee").  Gonzales appealed the Confirmation Order, and the Bankruptcy Appellate Panel affirmed, except as to a provision subordinating Gonzales's interest in the Parcel Transfer Fee to up to $45 million in financing obtained by the Desert Entities.

In 2011, Gonzales sued Desert Land, Desert Oasis Apartments, Desert Oasis Investments, LLC, Specialty Trust, Specialty Strategic Financing Fund, LP, Eagle Mortgage Co., and Wells Fargo (as trustee for a mortgage-backed security) in state court for: (1) declaratory judgment that a transfer of Parcel A had occurred entitling him to the Parcel Transfer Fee; (2) declaratory judgment that the lender defendants in that action knew of the bankruptcy proceedings and the requirement of the Parcel Transfer Fee; (3) breach of contract (for breach of the Confirmation Order); (4) breach of the implied covenant of good faith and fair dealing (same); (5) judicial foreclosure against Parcel A under Nevada law; and (6) injunctive relief.  Defendants removed

that case to the Bankruptcy Court. The Bankruptcy Court recommended withdrawal of the reference because the undersigned had issued the underlying Confirmation Order while sitting as a bankruptcy judge. One or more parties so moved, and the Court granted the motion. In that case, *Gonzales v. Desert Land, LLC*, 3:11-cv-613, the Court dismissed the second and fifth causes of action and later granted certain defendants' counter-motion for summary judgment as against the remaining claims. Plaintiff asked the Court to reconsider and to clarify which, if any, of its claims remained, and defendants asked the Court to certify its summary judgment order under Rule 54(b) and to enter judgment in their favor on all claims. The Court denied the motion to reconsider, clarified that it had intended to rule on all claims, and certified the summary judgment order for immediate appeal. Defendants submitted a proposed judgment, which the Court signed, and Plaintiff asked the Court to enjoin defendants from further encumbering Parcel A with loans or mechanic's liens until the Court of Appeals ruled, a motion the Court denied. The Court of Appeals affirmed, ruling that the Parcel Transfer Fee had not been triggered based on the allegations in that case, and that Plaintiff had no lien against Parcel A.

      **B.**     **The Lead Case**

In the present Lead Case, Case No. 2:13-cv-931, also removed from state court, Plaintiff recounts the Confirmation Order and the Parcel Transfer Fee. (*See* Compl. ¶¶ 10–14, Apr. 10, 2013, ECF No. 1, at 11). Plaintiff also recounts the history of the '613 Case. (*See id.* ¶¶ 17–21). Plaintiff alleges that Defendant Shotgun Nevada Investments, LLC ("Shotgun") began making loans to the Desert Entities for the development of Parcel A between 2012 and January 2013 despite its awareness of the Confirmation Order and Parcel A transfer fee provision therein. (*See id.* ¶¶ 22–23). Plaintiff sued Shotgun, Shotgun Creek Las Vegas, LLC, Shotgun Creek Investments, LLC, and Wayne M. Perry for intentional interference with contract, intentional interference with prospective economic advantage, and unjust enrichment based upon their having provided financing to the Desert Entities to develop Parcel A. Defendants removed and

1  moved for summary judgment, arguing that the preclusion of certain issues decided in the '613

2  Case necessarily prevented Plaintiffs from prevailing in the present case.  The Court granted that

3  motion as a motion to dismiss, with leave to amend.

4        Plaintiff filed the Amended Complaint ("AC"). (*See* Am. Compl., Aug. 20, 2013, ECF

5  No. 28).  Plaintiff alleges that the Confirmation Order permitted Parcel A to be used as collateral

6  for up to $25,000,000 in mortgages of Parcel A itself or as collateral for a mortgage securing the

7  purchase of real property subject to the FLT Option if the proceeds were used only for the

8  purchase of that real property, but that any encumbrance of Parcel A outside of these parameters

9  would trigger the Parcel Transfer Fee. (*See id.* ¶¶ 15–16).  Various Shotgun entities made

10  additional loans to the Desert Entities in 2012 and 2013 "related to the development of Parcel

11  A." (*Id.* ¶¶ 25–26).  Multiple Shotgun entities have also invested in SkyVue Las Vegas, LLC

12  ("SkyVue"), the company that owns the entities that own Parcel A. (*Id.* ¶ 27).  Plaintiff alleges

13  that the reason Perry, the principal of the Shotgun entities, did not document his $10 million

14  investment was to "avoid evidence of a transfer," and thus the triggering of the Parcel Transfer

15  Fee. (*See id.* ¶ 29).

16        Defendants moved for summary judgment, and Plaintiff moved to compel discovery

17  under Rule 56(d).  The Court struck the conspiracy and declaratory judgment claims from the

18  AC, because Plaintiff had no leave to add them.  The Court otherwise denied the motion for

19  summary judgment and granted the motion to compel discovery, although the Court noted that

20  the intentional interference with prospective economic advantage claim (but not the intentional

21  interference with contractual relations claim) was legally insufficient.  Defendants moved for

22  summary judgment after further discovery and filed a motion in limine.  The Court denied both

23  motions.  The Court refused to reconsider but granted a motion to strike the untimely jury

24  demand.

25  ///

    **C.**    **The Member Case**

In the present Member Case, Case No. 2:15-cv-915, Plaintiff sued the Desert Entities, Skyvue Las Vegas, LLC, Howard Bulloch, and David Gaffin variously in this Court for breach of contract, breach of the covenant of good faith and fair dealing, and conspiracy, making a timely jury demand in the Complaint.

The Court recently asked the parties to show cause why both cases should not be tried to a jury. The Court has held a hearing.

## II. DISCUSSION

The Court is convinced that the Lead Case should not be tried to a jury. Although the trial of that case by a jury would not likely be reversable error, it is clear that Plaintiff did not make a timely jury demand, and Defendants were adamant at the hearing that they have prepared for the case under the impression that it would be tried to the Court.

Although Defendants were also adamant at the hearing that they had so prepared as to the Member Case, as well, that was not a reasonable expectation, as Plaintiff clearly made a timely jury demand in the Complaint in the Member Case. Defendants argue that Plaintiff has acted as if he expected the trial to be a bench trial in the Member Case, and he has therefore waived his right to a jury trial in that case. The Court can find nothing in the record so indicating.

Neither a plaintiff nor a court must continually remind a defendant that a jury trial has been demanded. Although a jury trial can be waived by conduct, including inaction or acquiescence, the Court finds no such conduct here. In *Reid Bros. Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292 (9th Cir. 1983), the Court of Appeals ruled that a defendant's continuous attempts to defeat a plaintiff's jury right constituted a waiver of any right the defendant might otherwise have had to rely on the plaintiff's own jury demand when the plaintiff later withdrew the demand in order to obtain an earlier trial date. *Id.* at 1303–05. Similar circumstances are not present here. Plaintiff has never attempted to prevent a jury trial in the

1  Member case.  A party also waives a previous jury demand by proceeding to conduct a trial to the
2  court without objection.  *White v. McGinnis*, 903 F.2d 699, 700 (9th Cir. 1990).  Those
3  circumstances are also not present here.
4      Defendants argue that failing to mention a prior jury demand and permitting a court to set
5  a bench trial can therefore constitute a waiver of a jury trial.  That is probably true in some
6  circumstances, but the Court finds that under the circumstances here there was no waiver.  In this
7  case, the Court originally set the "bench trial" for July 27, 2015 in the Lead Case, before
8  consolidation.  The Court later reset the "bench trial" for August 31, 2015.  On August 10, 2015,
9  the Court again reset the "bench trial" for December 7, 2015. The next day, the Court
10 consolidated the cases.  On September 16, 2015, the Court granted a stipulation to continue the
11 "trial" (not "the bench trial") to May 23, 2016.  The Court has never entered a pretrial order
12 indicating a bench trial in the Member Case or otherwise indicated that the case would not be
13 tried to a jury such that a defendant expecting a jury trial in the Member Case should have been
14 expected to object.  The Court cannot find a waiver of the constitutional right to trial by jury
15 under these circumstances.

**CONCLUSION**

17     IT IS HEREBY ORDERED that Case No. 2:13-cv-931 will be tried to the Court but Case
18 No. 2:15-cv-915 will be tried to a jury.
19     IT IS SO ORDERED.
20 Dated this 3rd day of March, 2016.

_____
ROBERT C. JONES
United States District Judge