# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| TOM GONZALES,<br><br>      Plaintiff,<br><br>vs.<br><br>SHOTGUN CREEK LAS VEGAS, LLC et al.,<br><br>      Defendants. | 2:13-cv-00931-RCJ-VPC<br><br>**ORDER** |
| TOM GONZALES,<br><br>      Plaintiff,<br><br>vs.<br><br>DESERT LAND, LLC et al.,<br><br>      Defendants. | 2:15-cv-00915-RCJ-VPC<br><br>**ORDER** |

This case arises out of the alleged of breach of a settlement agreement that was part of a confirmation order in a Chapter 11 bankruptcy. Pending before the Court are cross-motions for summary judgment.

///

///

///

## I. PROCEDURAL HISTORY

This case is the third action in this Court by Plaintiff Tom Gonzales concerning his alleged entitlement to a fee under a plan of confirmation the undersigned entered years ago while sitting as a bankruptcy judge.

### A. The Desert Land Bankruptcies

On December 7, 2000, Plaintiff loaned $41.5 million to Desert Land, LLC and Desert Oasis Apartments, LLC to finance their acquisition and development of land in Las Vegas, Nevada. The loan was secured by a deed of trust. On May 31, 2002, Desert Land, LLC, Desert Oasis Apartments, LLC, and Desert Ranch, LLC filed for bankruptcy, and the undersigned jointly administered those bankruptcies while sitting as a bankruptcy judge. The court confirmed the Second Amended Plan of Reorganization ("the Plan"), and the resulting confirmation order ("the Confirmation Order") included a finding that a settlement had been reached ("the Settlement Agreement," which, along with the Plan, was attached to the Confirmation Order) under which Plaintiff would extinguish his note and reconvey his deed of trust as to his interest in Parcel A, Plaintiff and another party would convey their fractional interests in Parcel A to Desert Land, LLC and/or Desert Oasis Apartments, LLC so that those entities would own 100% of Parcel A, Plaintiff would receive Desert Ranch, LLC's 65% interest in another property, and Plaintiff would receive $7.5 million or $10 million if Parcel A were sold or otherwise transferred, depending on the date of transfer ("the Parcel A Transfer Fee"). Plaintiff appealed, and the Bankruptcy Appellate Panel ("BAP") affirmed except as to a provision subordinating Plaintiff's interest in the Parcel A Transfer Fee to up to $45 million in financing. The Court of Appeals affirmed the BAP's ruling.

///

## B. The First Action

In 2011, Plaintiff sued Desert Land, LLC, Desert Oasis Apartments, LLC, Desert Oasis Investments, LLC, Specialty Trust, Specialty Strategic Financing Fund, LP, Eagle Mortgage Co., and Wells Fargo in state court for: (1) declaratory judgment that a transfer of Parcel A had occurred entitling him to the Parcel A Transfer Fee; (2) declaratory judgment that the lender defendants in that action knew of the bankruptcy proceedings and the requirement of the Parcel A Transfer Fee; (3) breach of contract; (4) breach of the implied covenant of good faith and fair dealing; (5) judicial foreclosure against Parcel A under Nevada law; and (6) injunctive relief. He defendants removed the case to the Bankruptcy Court. The Bankruptcy Court recommended withdrawal of the reference because the undersigned had issued the Confirmation Order while sitting as a bankruptcy judge. One or more parties so moved, and the Court granted the motion. In that case, No. 3:11-cv-613, the Court ruled against Plaintiff, and the Court of Appeals affirmed, ruling that the Parcel A Transfer Fee had not been triggered based on the allegations made there, and that Plaintiff had no lien against Parcel A.

## C. The Second Action

In Case No. 2:13-cv-931, also removed from state court, Plaintiff alleges that Shotgun Investments Nevada, LLC made various loans to the Desert entities for the development of Parcel A between 2012 and January 2013 despite its awareness of the Plan and the Parcel A Transfer Fee provision therein. (*See* Compl. ¶¶ 22–23, ECF No. 1). Plaintiff sued Shotgun Investments Nevada, LLC (erroneously named as "Shotgun Nevada Investments, LLC"), Shotgun Creek Las Vegas, LLC, Shotgun Creek Investments, LLC, and Wayne M. Perry for intentional interference with contractual relations, intentional interference with prospective economic advantage, and unjust enrichment. Defendants removed and moved for summary

judgment, arguing that the preclusion of certain issues decided in the First Action controlled the Second Action. The Court granted that motion as a motion to dismiss, with leave to amend.

Plaintiff filed the Amended Complaint ("AC"). (*See* Am. Compl., ECF No. 28). Defendants moved for summary judgment, and Plaintiff moved to compel discovery. The Court struck the conspiracy and declaratory judgment claims from the AC, because Plaintiff had no leave to add them. The Court otherwise denied the motion for summary judgment and granted the motion to compel discovery, although the Court noted that the intentional interference with prospective economic advantage claim was legally insufficient. Defendants moved for summary judgment after further discovery. The Court denied the motion and a motion to reconsider but granted a motion to strike the untimely jury demand. The Court held a bench trial in Las Vegas on the claim for intentional interference with contractual relations, and the case settled during a recess of the trial.

### D. The Present (Third) Action

In the present case, Plaintiff sued the various Desert entities, SkyVue Las Vegas, LLC, Howard Bulloch, and David Gaffin variously in this Court for breach of contract, breach of the covenant of good faith and fair dealing, and conspiracy, making a timely jury demand. No parties filed dispositive motions before trial. The case is scheduled for a jury trial on April 17, 2017. The Court has invited the parties to file summary judgment motions, and they have done so.

## II. SUMMARY JUDGMENT STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.

If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid

summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50. Notably, facts are only viewed in the light most favorable to the nonmoving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). That is, even where the underlying claim contains a reasonableness test, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

### III. ANALYSIS

#### A. Parcel A Transfer

Since Plaintiff transferred his interest in Parcel A to Desert Land, LLC and/or Desert Oasis Apartments, LLC (and caused the interest of the Barry and Amy Fieldman Trust in Parcel A to also be so transferred) as required under the Settlement Agreement incorporated into the Plan and Confirmation Order, Parcel A was wholly owned in unspecified fractions by Desert Land, LLC and Desert Oasis Apartments, LLC. (Settlement Agreement 1–3, Ex. 1).[1] On April

---

[1] The Court will refer to exhibits adduced at trial in the consolidated '931 Case.

29, 2014, Desert Land, LLC conveyed eight parcels of land to Desert Oasis Investments, LLC. (Deed, Ex. 270). The April 29, 2014 transfer was not a "Parcel A Transfer" as contemplated under Section A(e) of Article III of the Plan. The sold land was identified in the deed as being part of Clark County Assessor's Parcel No. 162-28-202-013. (*Id.*). The sold land as identified by a list and corresponding maps appears to consist of a square with Giles St. to the West, E. Ali Baba Ln. to the North, Haven St. to the East, and E. Mandalay Bay Rd. to the South. (Chart of Shotgun Parcels, Ex. 174; Maps, Exs. 175, 176). No part of the sold land is within Parcel A; rather, the sold land is entirely to the North of Parcel A, which consists of an irregular shape occupying approximately 75% of the land bordered by E. Mandalay Bay Rd. to the North, Haven St. to the East, Four Seasons Dr. to the South, and S. Las Vegas Blvd. to the West. (Aerial Photo, Ex. 181). There is no evidence in the record of Desert Land, LLC or Desert Oasis Apartments, LLC having ever transferred title to any other real property, and there is therefore no evidence of any Parcel A Transfer.

### B. Parcel A Equity Transfer

A "Parcel A Equity Transfer" under the Plan is a subtype of Parcel A Transfer consisting of the conveyance of "any legal or beneficial interest in the entity or entities that own Parcel A." (Plan 6:26–27). When such a transfer occurs, Plaintiff is entitled to 50% of the "Net Proceeds" thereof until the entire $10 million of the Parcel A Transfer Fee has been cumulatively satisfied. (Plan 5:17–22). "Net Proceeds" means gross proceeds minus related transaction costs paid to unrelated parties, and it excludes consideration in the form of stock, memberships, partnerships, or other equity interests in any entity wholly owned or controlled by Howard Bulloch or David Gaffin or their trusts. (*Id.* 6:11–17).

SkyVue Las Vegas, LLC was incorporated on June 21, 2011 with David Gaffin and Howard Bulloch as its managers. (Art. Org., Ex. 191). Effective October 18, 2011, Compass Investments, LLC gave its 99.5% interests in Desert Land, LLC and Desert Oasis Apartments, LLC to SkyVue Las Vegas, LLC (with Bruce Bulloch retaining his 0.5% interests in Desert Land, LLC and Desert Oasis Apartments, LLC) in exchange for a 64.4445% interest in SkyVue Las Vegas, LLC. (Second Am. to Amd. & Restated Op. Agr. of Desert Oasis Apts., LLC, Ex. 259; Am. to Second Amd. & Restated Op. Agr. of Desert Land, LLC, Ex. 260; Action by Written Consent of Members of Compass Investments, LLC, Ex. 263; Action by Written Consent of Members of Desert Oasis Apartments, LLC, Ex. 264; Action by Written Consent of Members of SkyVue Las Vegas, LLC, Ex. 265). The October 18, 2011 transfer was a Parcel A Equity Transfer as contemplated under Section A(e) of Article III of the Plan because it was a transfer of beneficial interest in the entities that owned Parcel A, i.e., Desert Land, LLC and Desert Oasis Apartments, LLC.

The October 18, 2011 Parcel A Equity Transfer, however, did not result in any Net Proceeds as contemplated under Section A(e) of Article III of the Plan because the consideration given was a membership interest in a limited liability company wholly controlled by Howard Bulloch and David Gaffin, i.e., SkyVue Las Vegas, LLC. The transaction therefore did not require any partial payment of the Parcel A Transfer Fee to Plaintiff. The only evidence in the record as to control of SkyVue Las Vegas, LLC as of October 18, 2011 is its Articles of Organization filed in June of that year, which list Howard Bulloch and David Gaffin as the only managers. (Art. Org., Ex. 191). Because SkyVue Las Vegas, LLC was wholly controlled by Howard Bulloch and David Gaffin, it does not matter who owned SkyVue Las Vegas, LLC for the purpose of whether the transaction triggered a partial Parcel A Transfer Fee under the Plan.

There is no evidence of any further transfers of equity interests in Desert Land, LLC or Desert Oasis Apartments, LLC, and there is therefore no evidence of any further Parcel A Equity Transfer.

### C. Parcel A Permitted Financing

It appears that Defendants caused Desert Land, LLC to encumber Parcel A with no less than $31.5 million in various Mortgages as of January 3, 2013. (Am. Deed of Trust, Ex. 91). Perry signed the deed of trust on behalf of his three co-Defendants. (*Id.*). And Perry has admitted that Parcel A was encumbered by approximately $100 million as of October 29, 2015. (Perry Dep. 35, ECF No. 175-14). Desert Land, LLC's encumbrance of Parcel A with more than $25 million in Mortgages was a breach of the Parcel A Permitting Financing clause of Section A(e) of Article III of the Plan, although it did not trigger the Parcel A Transfer Fee, no matter how over-encumbered the land was.

The Plan excludes "a Parcel A Mortgage" from the definition of Parcel A Transfer. (Plan 6:22–23, Ex. 2). The Plan does not separately define "Parcel A Mortgage." That term is most naturally read to mean any Mortgage against Parcel A. "Mortgage" is defined generically to include deeds of trust, security agreements, or other collateral assignments securing bona fide loans for value. (*Id.* 6:9). The Plan defines "Parcel A Permitting Financing" as, *inter alia*, "one or more Mortgages against Parcel A or any part thereof, securing financing in the principal amount of up to $25,000,000 any one time outstanding . . . ." (*Id.* 6:28–7:2). The Court must give effect to each word of the Plan if possible. *Royal Indem. Co. v. Special Serv. Supply Co.*, 413 P.2d 500, 502 (Nev. 1966).

It is most easily argued that interpreting "Parcel A Permitted Financing" to set a trigger for a Parcel A Transfer would be to ignore the exclusion of Mortgages against Parcel A from the

definition of a Parcel A Transfer, and that Parcel A Permitted Financing must therefore not be read as establishing a trigger of a Parcel A Transfer. That is, whether or not the encumbrance of Parcel A with more than $25 million in Mortgages at any one time outstanding violates the Parcel A Permitted Financing clause, it nevertheless does not directly trigger a Parcel A Transfer. The two are simply separate clauses of the Plan that do not depend on one another. So although the over-encumbrance of Parcel A would breach the Plan, Plaintiff would still have to prove damages from such a breach under familiar principles of contract law. But in no case would the over-encumbrance directly trigger his entitlement to the Parcel A Transfer Fee.

It can also be argued that one should read the exclusion of "a Parcel A Mortgage" from the definition of Parcel A Transfer to simply mean that a Mortgage against Parcel A does not in-and-of-itself constitute a Parcel A Transfer, although the existence of more than $25 million in Mortgages against Parcel A outstanding at any given time does. The "Parcel A *Permitted* Financing" language indicates that the $25 million is some kind of limitation on Mortgages against Parcel A. This interpretation is strained, however, because "a Parcel A Mortgage" is altogether excluded from the definition of a "Parcel A Transfer." If the drafters of the Plan intended only that a Mortgage against Parcel A would not constitute a Parcel A Transfer unless it were too large, they would surely have stated something to that effect with qualifying language such as "within the limitations of the Parcel A Permitted Financing" or "subject to any limitations elsewhere in this Plan." The total absence of any such limitation on the exclusion requires the Court to interpret the exclusion as absolute if it can do so without rendering some other provision of the Plan superfluous.

Another potential interpretation of "a Parcel A Mortgage" is any Mortgage against Parcel A already in force as of the date of confirmation of the Plan. In other words, existing mortgages

(including refinancing of those mortgages up to the total principal amount as of the date of confirmation) would not count against the $25 million limitation of Parcel A Permitted Financing. This interpretation is not ideal, however, because—in addition to the problem of the lack of qualifying language noted *supra*—a Parcel A Transfer is naturally contemplated as a future event, and it was known when the Plan was written that some Mortgages already existed against Parcel A. A provision providing that existing Mortgages against Parcel A would not trigger a Parcel A Transfer is therefore unnecessary.

The Court finds that the Plan language is not ambiguous as to whether the $25 million limitation on Mortgages against Parcel A is a trigger of the Parcel A Transfer Fee. It is not. The definition of Parcel A Transfer unambiguously excludes Mortgages against Parcel A without qualification, and the Court must give this language effect if it can do so without rendering any other language of the Plan superfluous. The Court can do so without even straining any other language of the Plan. The efficacy of the $25 million limitation of the Parcel A Permitted Financing clause is given effect by the Court's ruling that if more than $25 million in Mortgages has been at some time outstanding against Parcel A, that clause of the Plan has been breached. But a breach of the Parcel A Permitted Financing clause is not the same as an occurrence of the conditions precedent to the Parcel A Transfer Fee, as identified in the Parcel A Transfer and Parcel A Equity Transfer clauses. Plaintiff may or may not have damages from any breach of the Parcel A Permitted Financing clause. If so, he would have to prove them under familiar principles of contract law.

Plaintiff has not proved any damages as a result of any breach of the Parcel A Permitted Financing clause of Section A(e) of Article III of the Plan. Such damages might result, for example, via the foreclosure of a loan against Parcel A at a time when Desert Land, LLC and

Desert Oasis Apartments, LLC did not have enough equity in Parcel A to satisfy the Parcel A Transfer Fee (which would presumably be triggered by a foreclosure deed) out of the proceeds of such a foreclosure. This was the reason for the Parcel A Permitted Financing clause— to protect Plaintiff's $10 million indirect interest in Parcel A even assuming the limitation did not function as a subordination clause, i.e., to ensure that the loan-to-value ratio in Parcel A was kept high enough to ensure the owner of Parcel A retained enough equity that Plaintiff would realize his $10 million upon a transfer even if by way of foreclosure. (Tr. 26:16–27:4, Mar. 31, 2003, Ex. 185; Tr. 24, 37, Nov. 28, 2011, Ex. 31). But Plaintiff has not produced evidence of any damages under this or any other theory.

The Court finds that Plaintiff has not yet incurred damages as a result of any over-encumbrance of Parcel A, and his fear of impending damages is too speculative for an alternative remedy at this point. There has been a breach of the Parcel A Permitted Financing clause, but Plaintiff has provided no evidence that Parcel A is in fact over-encumbered. At an estimate of $10–15 million value per acre, Parcel A is worth $380–570 million. (*See* Perry Dep. 35). Plaintiff has adduced no contrary evidence of Parcel A's value, and even $100 million in Mortgage debt against Parcel A does not remotely imperil Plaintiff's $10 million Parcel A Transfer Fee in the eventuality of a foreclosure. His interest in the Parcel A Transfer Fee has not been injured, because a foreclosure would not currently leave Defendants without the equity in Parcel A required to make good on the fee. Still, there has been a breach, and Plaintiff cannot in equity be made to suffer it without any remedy until some harm materializes, e.g., if Defendants continue to encumber Parcel A to an amount near or beyond its value, at which point no remedy will be available because Defendants will have no equity in the property with which to pay the fee triggered by a foreclosure sale. Accordingly, after further briefing and argumentation, the

Court may impose an equitable remedy to protect Plaintiff's interest in the Parcel A Transfer Fee going forward. Whether that remedy should be in the form of a lien against Parcel A, reformation of the Plan, or something else, is for the parties to brief and argue. For the time being, the Court grants summary judgment to Defendants as to damages. This eliminates the conspiracy claim. The bad faith claim is moot, because the Court finds no genuine issue of material fact as to a breach of contract. Plaintiff is entitled to summary judgment as to liability for the breach of contract, but Defendants are entitled to summary judgment as to damages.

## CONCLUSION

IT IS HEREBY ORDERED that the Motions for Summary Judgment (ECF Nos. 175, 176) as to Case No. 2:15-cv-915 are GRANTED IN PART and DENIED IN PART. Defendants are entitled to summary judgment against all claims except the claim for breach of contract. Plaintiff is entitled to summary judgment on liability for breach of contract. Defendants are entitled to summary judgment on the issue of damages.

IT IS FURTHER ORDERED that Plaintiff shall a FILE a motion as to suggested equitable remedies for the breach within twenty-one (21) days. Defendants shall have fourteen (14) days to respond, and Plaintiff shall have seven (7) days to reply.

IT IS FURTHER ORDERED that Howard Bulloch and David Gaffin are DISMISSED.

IT IS FURTHER ORDERED that the jury trial scheduled for May 22, 2017 in Case No. 2:15-cv-915 is VACATED.

IT IS SO ORDERED.

DATED: This 13th day of April, 2017.

_____
ROBERT C. JONES
United States District Judge